**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAMONT FULTON, | ) |
| | )    Civil Action No. 2: 13-cv-0398 |
|      Petitioner, | ) |
| | )    United States District Judge |
| v. | )    Arthur J. Schwab |
| | ) |
| THE ATTORNEY GENERAL OF THE | )    United States Magistrate Judge |
| STATE OF PENNSYLVANIA and | )    Cynthia Reed Eddy |
| LARRY MAHALLY, Superintendent of | ) |
| SCI Dallas, | ) |
|      Respondents. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.  RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed by Petitioner, Lamont Fulton, pursuant to 28 U.S.C. § 2254 be denied and that a certificate of appealability likewise be denied.

## II.  REPORT

### A.  Relevant Factual and Procedural History

Petitioner, Lamont Fulton ("Petitioner" or "Fulton"), is in prison as the result of his 2005 convictions for aggravated assault, robbery, and criminal conspiracy. In its opinion affirming the denial of post-conviction relief, the Pennsylvania Superior Court recounted the facts leading to Fulton's convictions as follows:

> The trial evidence established the following facts. Marty Armstrong ("Armstrong") who was about to enter the Army, was staying at an Army recruiter. Armstrong took a handgun from the recruiter without the latter's knowledge and hid it at a nearby location.

> Armstrong and [Fulton] were friends. On January 3, 2003, they both left their school and went to the location where the gun was hidden. Armstrong retrieved the weapon, and the two traveled by bus to downtown Pittsburgh. At

some point, Armstrong gave the gun to [Fulton]. The two of them talked about robbing someone and, as they walked through town, attempted to identify a victim. Armstrong suggested robbing a woman whom the pair saw at an ATM machine. [Fulton] told Armstrong not to do so as it was daylight and [Fulton] believed there were surveillance cameras near the ATM.

Eventually [Fulton] and Armstrong noticed Michael Lahoff (Victim) as he walked near a parking garage. Victim entered the garage; the pair followed him. He then entered an elevator. [Fulton] and Armstrong, having watched the elevator lights that showed the floor where Victim stopped, followed him via a different elevator. [Fulton] had the gun at that time, and he and Armstrong each began to tell one another to do the robbery. Finally [Fulton] handed Armstrong the weapon. Testimony from Armstrong indicated [Fulton] was to act as a look-out.

Armstrong approached Victim, pointed the gun at him and demanded money. Victim surrendered his wallet and asked or told Armstrong not to shoot. Thereafter, Armstrong shot Victim, twice, once in the shoulder and once in the neck. The neck shot severed Victim's spinal cord, rendering him a quadriplegic.

[Fulton] and Armstrong ran from the scene and used the money taken from Victim, fifteen dollars, to buy marijuana. Also, at some point the two switched coats in some type of effort to avoid being discovered. Eventually, both were arrested.

*Commonwealth v. Fulton,* No. 1078 WDA 2005 (Superior Court slip op. at 1-3 February 5, 2008)).

On January 8, 2003, Fulton was arrested and charged at CP-02-CR-0001114-2003 with committing on January 3, 2003, attempted homicide,[1] aggravated assault, robbery, and criminal conspiracy. On January 4, 2005, Fulton and his co-defendant, Marty Armstrong ("Armstrong"), proceeded to trial before the Honorable Jeffrey A. Manning. A jury trial was conducted for Fulton while a non-jury was conducted for Armstrong. On January 7, 2005, the jury returned its

---

[1] The attempted homicide charge against Fulton was nolle prossed on January 7, 2005.

verdict, finding Fulton guilty as charged for the crimes of aggravated assault, robbery, and criminal conspiracy.[2]

Attorney Michael DeRiso, appointed counsel, represented Fulton during trial and sentencing. On March 7, 2005, the court sentenced Fulton to the following sentence: Count 2: 60 – 120 months (aggravated assault); Count 3: 60 – 120 months (robbery) to be served consecutive to Count 2; and Count 4: 60 – 120 months (criminal conspiracy), to be served consecutive to Count 3.

Fulton, through new counsel, William E. Brennan, Esquire, filed a post-sentencing motion which was denied on May 25, 2005. On June 15, 2005, through Attorney Brennan, Fulton filed a timely Notice of Appeal. In his Concise Statement of Matters Complained Of On appeal, Fulton raised the following seven claims:

1. The lower Court erred in denying the defendant's Petition to Transfer Jurisdiction from Criminal to Juvenile Court pursuant to 42 Pa. C.S. § 6322;[3]

2. The lower Court erred in denying the Motion to Suppress the statement that the defendant gave to the police;

3. The Court abused its discretion in consolidating the defendant's case with the case of his co-defendant, Marty Armstrong;

4. Counsel was ineffective for failing to move to sever the defendant's case from the case of his co-defendant;

---

[2] Armstrong was convicted of attempted homicide, after pleading guilty to the lesser charges, and was sentenced to 25 to 50 years imprisonment.

[3] "Appellant was seventeen at the time of the incident. However, because he had reached, indeed had passed, the age of fifteen, the specific charges against him did not fit the definition of the term 'delinquent act' under the Juvenile Act, 42 Pa.C.S.A. §§ 6301 – 6365. Therefore, his charges were lodged in criminal court rather than juvenile court. See 42 Pa.C.S.A. § 6302. Pretrial, he filed a petition to transfer the case to juvenile court. Following a hearing, the court denied that motion." Superior Court Memorandum, February 5, 2008, at 2.

5. The evidence was insufficient evidence to establish the defendant's guilt as to the crimes of Robbery, Aggravated Assault and Criminal Conspiracy;

6. The verdict was against the weight of the evidence; and

7. Counsel was ineffective for failing to request that the Court instruct the jury consistent with Pennsylvania Standard Criminal Jury Instruction 4.01 as it pertains to Accomplice Testimony.

Concise Statement of Matters Complained Of On Appeal (ECF No. 15-2 at 49). Judge Manning on June 21, 2015, issued an opinion for appellate review rejecting each of the claims and finding that the judgment of sentence should be affirmed. In his brief to the Superior Court, Fulton's counsel winnowed the claims to the following four (4) claims:

1. Did the lower court err in denying the petition to transfer jurisdiction from criminal to juvenile court pursuant to 42 Pa.C.S. § 6322 insofar as Lamont Fulton, who had just turned 17 years old at the time of the incident, established by a preponderance of the evidence that the transfer would serve the public interest based on consideration of the factors contained in 42 Pa.C.S. § 6355(A)(4)(iii)?

2. Did the lower court abuse its discretion in consolidating the cases of Lamont Fulton and Marty Armstrong for trial insofar as their defenses were mutually antagonistic and conflicted at the core?

3. Was the evidence insufficient as a matter of law to sustain the convictions for robbery, aggravated assault and criminal conspiracy insofar as the Commonwealth failed to prove beyond a reasonable doubt that Lamont Fulton acted as the principal, accomplice or co-conspirator in the commission of the offenses?

4. Did the lower court err in finding that the guilty verdict on the charges of robbery, aggravated assault and criminal conspiracy was not contrary to the weight of the evidence.

Brief for Appellant (ECF No. 14-2 at 12). The Superior Court, by Order dated February 5, 2008, affirmed the judgment of sentence. *Commonwealth v. Fulton,* No. 1078 WDA 2005, slip op. (Pa. Super. Feb. 5, 2008) (ECF No. 14-5 at 14). The Pennsylvania Supreme Court denied further

review. *Commonwealth v. Fulton,* No. 132 WAL 2008, slip op. (Pa. July 2, 2008) (ECF No. 15-1 at 1). Fulton did not seek a writ of certiorari from the Supreme Court of the United States.

On July 15, 2009, Fulton filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 – 9546, raising the following three claims:

> 1. trial counsel was ineffective for failing to move to sever the cases of Lamont Fulton and Marty Armstrong;
>
> 2. the verdict was against the weight of the evidence for reasons stated in the concise statement, and trial counsel was ineffective for not preserving this issue for appeal,
>
> 3. counsel was ineffective for failing to request PA Jury Instruction 4.01 on Accomplice Liability insofar as the jury was not charged on how to weight (sic) the evidence of the coconspirator's testimony implicating Lamont Fulton.

(ECF No. 15-1, at 5). The PCRA court appointed Joseph V. Luvara, Esquire, to represent Fulton and on October 30, 2009, Attorney Luvara filed an Amended PCRA petition. The Amended Petition incorporated Claims 1 – 3 of the *pro se* petition, and added a forth claim, as follows:

> 4. Defendant's sentence at CC200301114 was illegal – in violation of Article 1, Section 9 of the Pennsylvania Constitution and/or the Fourteenth Amendment of the United States Constitution, of 42 Pa.R.Cr.P. 705 and/or other law – as he was not given credit for time served in custody for the period of January 8, 2003 to November 17, 2003 where credit for that period was not awarded toward any other sentence.

Amended PCRA Petition, ECF No. 15-1 at 15.

On January 7, 2010, in accordance with Pennsylvania Rule of Criminal Procedure 907, the PCRA court (who was the trial judge who presided over Fulton's criminal trial and sentencing) filed an Order notifying Fulton of its intention to dismiss the PCRA petition. (ECF NO. 15-2 at 37). By Order filed March 22, 2010, but dated February 16, 2010, the PCRA court entered its final order dismissing the PCRA petition without a hearing. (ECF No. 15-2 at 36).

On March 5, 2010, Fulton, through Attorney Luvara, filed a Notice of Appeal to the Superior Court, raising the following six claims:

1. Whether Defendant's sentence is illegal as he was not given credit for all time served in custody prior to sentencing?

2. Whether the Court of Common Pleas erred in holding the claim for credit for time served was not cognizable under the PCRA?

3. Whether the Court of Common Pleas erred in holding one or more of Defendant's claims were previously litigated when addressed by that Court in its opinion in Defendant's direct appeal?

4. Whether trial counsel was ineffective for not requesting an instruction under Pa.S.S.J.I (Crim.) § 4.01 so that the jury would know how to weigh the testimony of a co-conspirator?

5. Whether trial counsel was ineffective for failing to move to sever the case from the case of co-defendant Marty Armstrong?

6. Whether the Court of Common Pleas erred and/or abused its discretion in failing to hold an evidentiary hearing on one or more of Defendant's PCRA claims?

Brief for Appellant, ECF No. 15-2 at 10.

Judge Manning denied the PCRA petition and on March 26, 2010, ordered the record be transmitted to Superior Court indicating that he had set forth his reasons for denying the petition in his Notice of Intent to Dismiss dated January 17, 2010.[4]   On October 29, 2010, the Superior Court affirmed in part and reversed and remanded for the limited purpose of determining the amount of time that Fulton should be awarded credit for time served. The Superior Court found that the rest of Fulton's PCRA petition was appropriately dismissed. *Commonwealth v. Fulton,* No. 395 WDA 1020, slip op (Oct. 29, 2010) (ECF No. 15-3 at 34).  The Pennsylvania Supreme

---

[4]     In his Notice of Intent, Judge Manning noted that he had addressed Fulton's claim regarding his credit for time served in a separate order.  However, as the Superior Court noted, the official court record does not contain such an order.

Court denied further review and remanded the case to the Court of Common Pleas for resentencing. *Commonwealth v. Fulton,* No. 589 WAL 2010, slip op. (Pa. March 1, 2011).

A resentencing hearing was held before Judge Manning on July 14, 2011. The trial court vacated the original sentence and imposed an identical aggregate sentence of fifteen to thirty years imprisonment, and gave Fulton the appropriate credit for time served. Through counsel, Fulton filed a post-sentence motion seeking a modification of sentence. Fulton contended that the sentencing court failed to consider, in light of his conduct since the imposition of the original 2005 sentence, all of the factors contained in 42 Pa. Cons. Stat. Ann § 9721(b) and/or § 9781(d). Fulton requested a sentence of not less than ten (10) nor more than twenty (20) years. Defense counsel requested and was granted permission to file an Amended Post-Sentence Motion until October 30, 2011. Because no Amended Post-Sentence Motions were filed, on November 30, 2011, the Post-Sentence Motion was denied by operation of law pursuant to Pa. R.Crim.P. 720(B)(3)(b).

Fulton filed a timely Notice of Appeal with the Superior Court. In his appellant brief, he raised the following single claim:

> Whether the Court of Common Pleas failed to consider – in light of Defendant's conduct since imposition of the March 7, 2005 sentence in this matter – all of the factors contained in 42 Pa.C.S. §§ 9721(b) and 9781(d)?

Brief for Appellant, (ECF No. 15-5, at 5). Judge Manning on December 1, 2011, issued an opinion for appellate review rejecting the claim and finding that the judgment of sentence should be affirmed. On January 7, 2013, the Superior Court issued a Memorandum affirming Fulton's judgment of sentence. Fulton did not seek further review with the Pennsylvania Supreme Court.

On or about March 9, 2013, Fulton initiated the present proceedings in this Court by filing a pro se petition for writ of habeas corpus. He raises ten claims for relief. Petition (ECF No. 5). Respondents filed an Answer (ECF No. 14). The matter is ripe for disposition.

**B.     Standard of Review**

1.   28 U.S.C. § 2254

This case is governed by the federal habeas statute applicable to state prisoners. 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Fulton's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *See., e.g., Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). *See also Real v. Shannon,* 600 F.3d 302-309-10 (3d Cir. 2010).

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004). As codified at 28 U.S.C. § 2254(d), AEDPA provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on <u>an unreasonable determination of the facts in light of the evidence presented in the State court proceeding</u>.

28 U.S.C. § 2254(d) (emphasis added).

The Supreme Court of the United States has stressed the "highly deferential" review that this Court must accord the state court's decision under § 2254(d):

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 392, 410 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, that application must be "objectively unreasonable." *Id.* at 409. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy,* 521 U.S. 320, 333 n.7 (1997), and "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

*Renico v. Lett*, 599 U.S. 766, 773 (2010).

Even more pointedly, the Supreme Court elaborated:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Our Court of Appeals has made clear that "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding

does not enter into the habeas calculation." *Hassine v. Zimmerman,* 160 F.3d 941, 954 (3d Cir. 1998). Put simply, "habeas proceedings are not the appropriate forum for [a prisoner] to pursue claims of error at the PCRA proceeding . . . . It is the original trial that is the 'main event' for habeas purposes." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004).

Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume all of the state court's factual findings are correct unless the presumption is rebutted by clear and convincing evidence. *See., e.g., Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also Weeks v. Snyder*, 219 F.3d 245, 259 (3d Cir. 2000) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court).

2.     Threshold Requirements Under 28 U.S.C.§ 2254

a.     Timeliness

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under AEDPA's one-year limitations period for section 2254 petitions. 28 U.S.C. § 2244(d). Respondents concede that Fulton's claims are timely under AEDPA's statute of limitations and, as a result, the court recommends that the claims be treated as such.

b.     Exhaustion

Next, this Court must address the threshold question of whether Fulton exhausted the "remedies available [to him] in the courts of the State." 28 U.S.C. § 2254(c). It is well settled that a state prisoner must exhaust all of his claims by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509, 517 (1982). The burden is on the habeas petitioner to establish that he has presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system. *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (quoting *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992)). In Pennsylvania, this requirement generally means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then to the Superior Court either on direct or PCRA appeal. *See, e.g., Lambert,* 387 F.3d at 233-34.[5] This Court can deny an unexhausted claim on the merits only if the claim is without merit.

In *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), the United State Supreme Court held that federal courts should not reach an alleged violation of federal law on habeas review if the state court's decision rests on an independent and adequate state ground.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

"The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 562 U.S. 307 (2011). The doctrine

---

[5]     Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address the claim. *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007).

applies whether the default occurred at trial, on appeal, or during collateral proceedings. *Edward v. Carpenter*, 529 U.S. 446, 451 (2000).

        c.      Procedural Default

As the United States Court of Appeals for the Third Circuit explained in *Rolan v. Coleman*:

> Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001); or when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule, *see McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).

*Rolan*, 680 F.3d 311, 317 (3d Cir. 2012). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730.

A petitioner may avoid procedural default from barring review of his habeas claim if he can demonstrate "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." *See Coleman*, 501 U.S. at 750; *Martinez v. Ryan,* -- U.S. ---, 132 S.Ct. 1309 (2012). A habeas petitioner may also overcome a procedural default of a claim if he can demonstrate a "miscarriage of justice." The petitioner must present evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo,* 513 U.S. 298, 316 (1995); *see also Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). This exception, however, only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* There is no question that the

instant case is not the type of extraordinary case in which Petitioner can overcome the default of his claims by way of the miscarriage of justice exception.

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72 (1977).

**C.     Discussion of Petitioner's Claims**

As stated above, Fulton has raised ten claims in his federal habeas petition. The claims will be addressed seriatim.

CLAIM ONE – "Trial counsel was ineffective for failing to request a jury instruction for testimony of co-defendant."

Fulton argues that his trial counsel was ineffective for failing to seek a jury instruction under PA SSJI (Crim.) 4.01, Accomplice Testimony. This claim was raised by Fulton in his Concise Statement of Matters Complained of on direct appeal and in his PCRA proceedings. Both the trial court and the Superior Court denied the claim on its merits.

In analyzing Fulton's claims under the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984), this Court must apply the standards set forth in § 2254 concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under *Strickland* is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. *Berryman v. Morton,* 100 F.3d 1089, 1095 (3d Cir. 1996).

The Supreme Court of the United States recently reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense

13

counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different that if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington,* 562 U.S. at 101 (internal quotations and citations omitted). The Supreme Court

further instructed:

Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (internal quotations and citations omitted).

Judge Manning addressed the ineffectiveness of counsel issue[6] and found that trial

counsel had a reasonable basis for his decision:

---

[6]     The Pennsylvania standard for ineffective assistance of counsel is identical to the federal standard. *Boyd v. Waymart*, 579 F.2d 330, 334 (3d Cir. 2009).

> Trial counsel would have a reasonable basis for not requesting an accomplice testimony instruction where such instruction would "contradict or be in derogation of the theory of defense." *Commonwealth v. Corley*, 816 A.2d 1109, 114 (Pa. Super. 2003). It was his position in this matter that he was not an accomplice or co-conspirator of his co-defendant. It was the defendant's position at trial, and remains his position as set forth in the Concise Statement of Matters Complained of on Appeal, that he was neither an accomplice nor a co-conspirator of his co-defendant. Because requesting a jury instruction on an accomplice liability would have been an acknowledgment that the defendant was an accomplice of the co-defendant, trial counsel clearly had a reasonable basis for not requesting that instruction where the defendant claimed that he was neither a co-conspirator nor an accomplice. Since trial counsel had a reasonable basis on the record for not asking for this instruction, he could not have been ineffective in failing to request it.

Opinion, CC No. 20030114, slip op. at 8 (June 21, 2006) (ECF No. 14-1 at 36). Fulton did not present this claim on direct appeal. He raised the claim again during his PCRA proceeding, and although the PCRA court considered the claim to be previously litigated, the Superior Court addressed the claim on the merits. The appellate court found that because Armstrong did not testify for the Commonwealth, a corrupt source charge was not warranted and that Fulton's claim that trial counsel was ineffective for failing to request such a charge was without merit.

In deciding Fulton's claim, it is clear that the appellate court applied the correct standard for ineffective assistance of counsel. The Superior Court's determination was neither contrary to clearly established law, nor was it an unreasonable application of *Strickland.* Accordingly, it is recommended that Claim One be denied.

<u>CLAIMS TWO AND FIVE</u> – "Trial court abused its discretion in consolidating case with co-defendant, defenses were mutually antagonistic" and "Trial counsel was ineffective for failing to move to sever case from case of co-defendant."

Petitioner's argument is based on the claim that he and his co-defendant presented antagonistic defenses[7] and that the trial court's decision to consolidate his trial with Armstrong's trial (Claim Two) and that his counsel's failure to move to sever (Claim Five) resulted in a constitutionally infirm conviction in violation of his right to a fair trial. Fulton presented Claim Two on direct appeal, but the Superior Court found that no objection had been made to the consolidation and, therefore, the challenge was waived on appeal. In his PCRA Amended Petition and PCRA Appeal, Fulton presented the claim as one of ineffective assistance of trial counsel for failure to object to the joinder or file a motion to sever. Both the PCRA court and the Superior Court denied relief on the ineffectiveness claim.

Respondent argues that the decision of the trial court to permit consolidation, and the decision of the Superior Court to affirm the trial court, is a decision that was based entirely upon state law. Fulton did not allege either in his direct appeal or in his PCRA proceedings that the consolidation in some way violated his rights under federal law. Accordingly, the Court agrees with Respondent and finds that Claim Two is not subject to federal review as the matter is strictly one of state law.

However, in order to assess the ineffectiveness claim raised in Claim Five it is necessary to analyze whether joinder was proper. The United States Supreme Court has noted that "[i]mproper joinder does not, by itself, violate the Constitution. Rather, misjoinder would rise to

---

[7] The Pennsylvania Supreme Court has stated that defenses become antagonistic only when the jury, in order to believe the essence of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony of his co-defendant. *Commonwealth v. Chester,* 587 A.2d 1367, 1373 (Pa. 1991).

the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane,* 474 U.S. 438, 446 n. 8 (1986); *see also Zafiro v. United States*, 506 U.S. 534, 538 (1993) (holding that mutually antagonistic defenses are not prejudicial *per se*, so as to require severance).

As the Superior Court noted joint trials are preferred where conspiracy is charged and there was no question that Fulton and Armstrong participated in the same act or transaction. The only question, therefore, was whether Fulton was prejudiced by being tried with Armstrong. The Superior Court found that he was not:

> Here, both Fulton and Armstrong were charged with criminal conspiracy. Neither Fulton nor Armstrong dispute they were both at the scene of the robbery and shooting and that Armstrong fired the shot that injured the victim, although Armstrong maintained the firearm discharged accidentally. The only matter in dispute is who was carrying the firearm up to the point of the shooting. As such, not only their defenses are not antagonistic, they do not even involve "finger pointing," *i.e.* "the effort to exculpate oneself by inculpating another." *Id.* "Given these facts, [A]ppellant's trial counsel properly refrained from making a motion to sever; it had no arguable merit, and would have been denied by the trial judge." *Commonwealth v. Gordon,* 477 A.2d 1342, 1349 (Pa. Super. 1994).

*Commonwealth v. Fulton*, 395 WDA 2010 (Oct. 29, 2010) (ECF No. 15-3 at 5-6).

The argument that Fulton would have had trial counsel make is meritless. Trial counsel was not ineffective for failing to raise a meritless claim. The Superior Court's determination was neither contrary to clearly established law, nor was it an unreasonable application of *Strickland*. Accordingly, it is recommended that Fulton be denied federal habeas relief on Claim Five.

CLAIM THREE – "Suppression court erred in not suppressing the statement given to police by petitioner, given totality of circumstance."

Fulton did not raise this issue on either direct or PCRA appeal. Respondent argues that this claim is subject to exhaustion and procedural default bars.

The Court finds that Respondent is correct. The claim fails the exhaustion and procedural default requirement for habeas review. Furthermore, the Court finds that Fulton has failed to adequately show, under *Coleman,* either "cause" or "actual prejudice," nor does he sufficiently show that the Court's refusal to reach the merits on this claim will cause a "fundamental miscarriage of justice." 501 U.S. at 750. Accordingly, the Court finds that Fulton has provided no basis to overcome the default and recommends that Claim Three be dismissed.

CLAIM FOUR: "Trial counsel was ineffective for failing to allow Petitioner to testify at suppression hearing. Direct and PCRA counsel ineffective."

As with Claim Three, this claim was not presented on direct or PCRA appeal, so the claim is subject to exhaustion and procedural default bars. Fulton, relying on *Martinez v. Ryan*, -- U.S. --, 132 S. Ct. 1309 (2012), contends that it was the ineffectiveness of his PCRA counsel that caused the default on this issue.

For claims of ineffective assistance of trial counsel not preserved and thus defaulted on collateral review, *Martinez* provides a possible means for establishing cause to excuse the default. *Martinez*, 132 S. Ct. at 1315. As stated by Justice Kennedy in the majority opinion:

> when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding,[8] a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington.* To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

---

[8] Pennsylvania requires claims of ineffective assistance of trial counsel to be raised in an initial-review collateral proceeding like a PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (claims of ineffective counsel should be raised on collateral review).

*Id*. at 1318 (emphasis added). The Supreme Court noted that its holding "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings." *Id*. at 1320. "Initial-review collateral proceedings" are those "which provide the first occasion to raise a claim of ineffective assistance at trial." *Id*. at 1315. In this case, the initial-review collateral proceeding was that before the PCRA court.

The Court finds that even if a procedural default does not bar federal habeas review, Fulton cannot prevail on his ineffectiveness claim under *Strickland* and, therefore, has no basis for a claim pursuant to *Martinez*. Fulton has failed to adequately prove that he was prejudiced by the actions of his trial counsel. Fulton has not shown that the outcome of the hearing would have been more favorable to him had he testified. There is no support in the record for Fulton's claims of coercion. Fulton was permitted to speak with his foster mother and they were given an opportunity to ask questions. There is no testimony that either Fulton or his foster mother asked to speak with an attorney, or even to consult with one another before Fulton agreed to waive his rights. There is no testimony to support the argument that Fulton was unable to understand the warnings that were given to him, that police interrogated him for a lengthy period before he offered his confession, or that threats or promises were made. Fulton testified at trial and he never testified that he gave his statement only after detectives made threats or promises.

A prisoner cannot be excused from default if the underlying ineffectiveness claim is insubstantial, lacks merit or factual support, or the attorney on collateral review did not perform constitutional standards. *Martinez*, 132 S. Ct. at 1319. Accordingly, it is recommended that Claim Four be denied as Fulton has failed to demonstrate that he was prejudiced by trial counsel's errors. As such, he cannot meet the requirements of *Martinez* and *Strickland* to overcome his procedural default and his claim should be dismissed.

Further, to the extent that the habeas petition alleges ineffective assistance of PCRA counsel as a ground for relief, such a claim is non-cognizable in a habeas petition. The habeas statute specifically provides that habeas relief is not available for claims of ineffective assistance of counsel at post-conviction proceedings. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"). Therefore, under § 2254, Fulton is barred from habeas relief for his claim of ineffective assistance of PCRA counsel.

CLAIM SIX: "Sentencing court violated 8th amendment when they sentence Petitioner."

As with Claims Three and Four, this claim was not presented on direct or PCRA appeal, so the claim is subject to exhaustion and procedurally default bars. The Court finds that even if a procedural default does not bar federal habeas review, Fulton cannot prevail on this claim, because under the circumstances, it is not a cognizable federal habeas claim.

Fulton argues that his sentence, an aggregate term of 15 to 30 years imprisonment, is excessive and that the sentencing court did not take any mitigating factors into account. Alleged defects in the state court's sentencing procedure constitute state law claims and do not provide a ground for federal habeas corpus relief. *See Pringle v. The Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984). Sentencing complaints such as those that involve excessiveness sound in state law and are not cognizable herein. Sentencing is a matter of state criminal procedure and as long as the sentence imposed falls within the statutory boundaries, it does not implicate federal constitutional issues. *See McNeil v. Dillman*, 2014 WL 2862255 (E.D.Pa. 2014) (collecting cases). The application of state law results in a violation of due process only if the sentence is arbitrary and capricious. *See Richmond v. Lewis*, 506 U.S. 40, 50 (1992). Such is not the case here.

First, Fulton's reliance on the decision of the United States Supreme Court in *Miller v. Louisiana,* --- U.S. ---, 132 S.Ct. 2455 (2012), is misplaced. In *Miller*, the Supreme Court held that mandatory life sentences without the possibility of parole for those under the age of 18 at the time of their crimes violate the Eighth Amendment prohibition on cruel and unusual punishment. While Fulton was under the age of 18 at the time he committed the instant offenses, he was not subject to a mandatory term of life imprisonment without the possibility of parole. Thus, *Miller* is inapplicable to Fulton's case.

Next, Fulton was convicted of three (3) felonies of the first degree. Each crime was punishable by a maximum of twenty (20) years imprisonment. The sentencing court did not impose the maximum sentence; rather the sentencing court imposed a guideline range sentence of five (5) to ten (10) years at each count, for an aggregate sentence of fifteen (15) to thirty (30) years. Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual punishment under the Eighth Amendment. *United States v. Miknevich,* 638 F.3d 178 (3d Cir. 2011).

Last, the record clearly reflects that the sentencing court did in fact take into account mitigating evidence at the resentencing hearing. Defense counsel informed the court that Fulton had enrolled in four classes and that Fulton was contrite for what he had done. Fulton, himself, addressed the court, accepted responsibility for his actions, and apologized to the victim. After listening to the evidence presented, the sentencing court again imposed an aggregate sentence of fifteen (15) to thirty (30) years imprisonment, with credit for time served. As the Superior Court noted:

> In reviewing the transcripts of the sentencing hearing and the trial court's Rule 1925(A) opinion, we find ample evidence to show that the trial court considered all the relevant factors listed in 42 Pa. C.S.A. § 9721(b) along with Appellant's

good conduct in prison.  As the trial court was unsure of whether it was required to conduct a complete resentencing, it allowed Appellant to present evidence as to his good behavior and other mitigating factors.  The trial court specifically found that "[Appellant's] progress towards rehabilitation as evidenced by his good conduct since being incarcerated, while laudatory, did not eclipse the gravity of his offense and the need for the protection of the public."  Trial Court Opinion, 8/8/12 at 5-6.

*Commonwealth v. Fulton,* No. 1898 WDA 2011, slip op. at 6 (Jan. 7, 2013) (ECF No. 15-6 at 35).  The sentence imposed neither exceeded statutory limits nor demonstrated excessiveness.  Accordingly, federal habeas corpus review of Fulton's sentence is not appropriate and it is recommended that this claim be denied.

CLAIM SEVEN:  "Direct and PCRA counsel ineffective for failing to raise issue of trial erring in not instructing jury correctly."

Although Fulton includes the claim of ineffective of assistance of direct and PCRA counsel in his habeas petition, Fulton has failed to develop this particular claim and his conclusory allegations do not state a claim in a federal habeas action.  *See Mayle v. Felix*, 545 U.S. 644, 649 (2005). ("The habeas rule instructs the petitioner to 'specify all grounds for relief available to [him]' and to 'state the facts supporting each ground.'" (quoting Rule 2(c) of the Rules Governing Habeas Corpus Cases).  Fulton does not set explain the rationale behind his claim or set forth any facts or law to support this claim.  An undeveloped claim is insufficient to require federal habeas relief.  Accordingly, it is recommended that Claim Seven be denied.

CLAIM EIGHT: "PCRA court erred in dismissing PCRA motion without evidentiary hearing."

Fulton raised this issue on PCRA appeal.  Respondents argue that this claim (i) is unexhausted because the claim was not presented as a federal constitutional claim and (ii) not cognizable in a federal habeas proceeding.

Federal courts have held that claims concerning errors in state post-conviction proceedings are simply not cognizable in a federal habeas proceeding. *See Word v. Lord*, 648 F.3d 129, 131 (2d Cir. 2011) (holding that alleged errors in a postconviction proceeding are not grounds for §2254 review and citing cases concluding same). This is so because it is an attack on a proceeding collateral to the detention and not the detention itself. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceedings does not enter into the habeas calculation . . . . Federal habeas power is 'limited . . . to a determination of whether there has been an improper detention by virtue of the state court judgment.' "). Thus, Claim Eight is not cognizable under § 2254 habeas review and it is recommended that Claim Eight be denied.

CLAIM NINE: "The evidence was insufficient as a matter of law to sustain the convictions for robbery, agg. assault, and criminal conspiracy insofar as the Commonwealth failed to prove beyond a reasonable doubt that Lamont Fulton acted as the principle, accomplice or co-conspirator in the commission of the offenses."

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze Claim Nine is set forth in *Jackson v. Virginia,* 443 U.S. 307 (1979). Evidence is sufficient to support a conviction if, "after reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original).

In rejecting this claim, the Superior Court applied the Pennsylvania equivalent of the *Jackson* standard. *Evans v. Court of Common Pleas, Delaware Cnty*., 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and

federal law). Fulton has not shown that the decision of the state court was contrary to clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d); *Williams,* 529 U.S. at 406. Therefore, the only remaining question for this Court to decide is whether the decision of the state court was an "unreasonable application" of *Jackson*. The United States Supreme Court has made clear that:

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury … to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." *Cavazos v. Smith*, 565 U.S. 1, __ (2011) (*per curiam*) (slip op., at 1). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. __, __ (2010) (slip op., at 5)).
>
> - - -
>
> [T]he only question under *Jackson* is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

*Coleman*, 132 S. Ct. at 2062, 2065.

In the instant case, after summarizing the law of criminal conspiracy, robbery, and aggravated assault, the Superior Court found as follows:

> When viewed in a way most favorable to the Commonwealth, the evidence in this matter can be taken to establish that Appellant accompanied his friend to downtown Pittsburgh knowing his friend was carrying a gun and, at other times, carrying the gun himself, participated in identifying Victim as the target of the assault and robbery, followed Victim into the garage and onto the floor where Victim could be found, handed Armstrong the weapon, encouraged Armstrong to act as the principal in the assault and robbery, acted as a look-out, tried to conceal or obscure evidence, and utilized the fruits of that robbery.
>
> Thus, Appellant's association with Armstrong, his presence at the scene and his active participation in the crime are all factors which, when viewed together and in context, could lead a rational tried of fact to conclude that

Appellant intended to assault and/or rob Victim and/or to aid Armstrong in the commission of those crimes, that Appellant and Armstrong did in fact agree to assault and/or rob Victim, and that they both acted overtly to carry out their intentions, most notably by Armstrong stealing Victim's money and shooting him.

In sum, we cannot say that the evidence was so weak and inconclusive that no probability of fact could be drawn therefrom. Rather, we find there was sufficient evidence from which a jury could reasonably conclude that each element of the conspiracy offense was shown beyond a reasonable doubt.

The evidence was also sufficient to sustain the robbery conviction. . . As a coconspirator, Appellant is liable for Armstrong's actions as the principal in the robbery . . . .

The same is true with the respect to the aggravated assault count. . . . Coconspirator Appellant is criminal responsible for Armstrong's conduct.

*Fulton,* No. 1078 WDA 2005, 2/05/2008, slip. op. at 7-8 (ECF No. 14-5). The Court finds that Fulton fails to carry his burden to demonstrate that the Superior Court's disposition of his claim of insufficiency of the evidence constituted an unreasonable application of *Jackson*. 28 U.S.C. § 2254(d).

Fulton cannot accept that he was convicted even though he testified in his own defense that he did not know that Armstrong would rob and/or shoot the Victim. But, as the state appellate court held, there was sufficient evidence introduced at Fulton's trial to convict him as an accomplice, and that makes him as responsible for the crimes of conspiracy, robbery, and aggravated assault as his co-defendant Armstrong, the principal actor.

For these reasons, the Court finds that the state court's adjudication of Fulton's claim did not "result[ ] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d). Accordingly, because Fulton's claim of insufficiency of the evidence does not warrant habeas relief, it is recommended that Claim Nine denied.

CLAIM TEN: "<u>The guilty verdict on the charges of robbery, agg. assault, and criminal conspiracy was contrary to the weight of the evidence.</u>"

Respondent argues that while this claim was raised on direct appeal, it was presented only as a state law claim and is therefore unexhausted. The Court agrees with Respondent and finds that the claim is unexhausted and not subject to federal habeas review. Fulton has failed to adequately show, under *Coleman*, either "cause" or "actual prejudice," nor does he sufficiently show that the Court's refusal to reach the merits on this claim will cause a "fundamental miscarriage of justice." 501 U.S. at 750.

Further, even if the claim was exhausted, this Court could not grant habeas relief because to determine whether the guilty verdict was contrary to the weight of the evidence, the Court would be required to assess the credibility of the evidence presented at trial, and state court credibility findings may not be redetermined on habeas review. *See Marshall v. Lonberger,* 459 U.S. 422, 434 (1983). Therefore, a claim alleging the evidence was against the weight of the evidence is not a cognizable claim under § 2254 and it is recommended that Claim Ten be denied.

**Certificate of Appealability**

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying those standards here, the Court concludes that jurists of reason would not find it debatable whether each of Robinson's claims should be denied. Accordingly, a certificate of appealability should be denied.

## Conclusion

For all of the above reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied. It is further recommended that there is no basis upon which to grant a certificate of appealability.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file written Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated: December 8, 2015

cc:      LAMONT FULTON
           GD-0287
           SCI Dallas
           1000 Follies Road
           Dallas, PA 18612
           (via U.S. First Class Mail)

           Leanne K. Shipley
           Rusheen R. Pettit
           Kelly D. Tomasic
           Office of the District Attorney of Allegheny County
           (via ECF electronic notification)